Mr. Healy, you took this case pro bono? Yes, Your Honor. Thank you. The court thanks you for your service. Good morning. And you're Mr. Pennekamp? Yes, Your Honor. All right. And you're here for the appellant. And I see Ms. Boggess is here for the appellee. And you may begin, Mr. Pennekamp. Thank you very much for the opportunity to do this. It may please the court. I'm Tom Pennekamp. I'm here on behalf of the Walker family. The Walker family were insured of State Farm. And this case involves an excess insurance policy. And it involves whether or not uninsured motorist coverage was offered to this family on their Florida vehicles. And this case is completely on all fours with a prior case that was before this court by the name of Strocheck. And in Strocheck, you certified this exact question back to the Florida Supreme Court. The Florida Supreme Court ruled on it, ruled in our favor. And this case is factually indistinguishable from that case, from that other case. So help me with that, because I agree with you that I think Strocheck sort of controls this case. But do I understand sort of the basic thrust of Strocheck to be that Florida law applies where the policy is, my terminology, so thoroughly altered as to have been delivered or issued in Florida? It's like a new policy, right? This is a really interesting part about Strocheck that, honestly, I'm going to cite to my partner who really figured this out. Because when I first read Strocheck, and I believe in the briefing you'll see it, they talk about the fact that it was a new policy. And the Florida Supreme Court went through a lot of effort to determine that the Masterpiece policy created a new policy. The importance had nothing to do with the question that's before this court about uninsured motorist coverage. Actually, what was going on there is the district court had recognized that the family, the Strocheck family, had rejected uninsured motorist coverage originally when the excess policy was issued originally. So the importance that a new policy was then presented to the Strochecks, and it wasn't sent to them in Florida the first time. But at that time, when the insurer voluntarily changed their format, they incorporated both the excess and the primary into a single policy. At that point, the Florida Supreme Court pointed that out because then they needed to get a new rejection. So in that case, the family had actually rejected uninsured motorist coverage. But then the Florida Supreme Court went to great lengths to point out that a new policy was issued triggering the need for a new rejection. It really doesn't have anything to do with this case because in this case, the family always accepted uninsured motorist coverage on all three underlying policies. So have I answered your question? Are you following what I'm saying? I'm not sure. I mean, I guess what I thought anyway I took away from Strocheck is that it's sort of, I don't know, a totality of the circumstances, multifactor analysis about sort of like how changed is the policy, you know, sort of with respect to the people named on the policy, the sort of language in the policy, the insured risks under the policy, sort of how Florida-centric has this thing become? This is the difference between the public policy exception argument and what we are really arguing here today, which is the application of this specific Florida statute. And it really boils down to the difference between an excess insurance policy and a primary insurance policy. So I'll give you an example. If I'm a North Carolina resident and I purchase a North Carolina primary policy, I also purchase a North Carolina excess policy. And so as a North Carolina resident, I may go to Florida. The car is going to move. I may go to Florida for three months. But it's still a North Carolina car. It's still registered and insured primarily under North Carolina. But if I then take that vehicle to Florida, register and insure it on a Florida primary policy, the excess policy is like a backpack. It follows the primary policies. Now that excess policy is providing coverage on a Florida vehicle. And under the statute that we've cited, which is 627-7272, they have to, because that excess policy is now providing liability coverage on a Florida policy for a Florida vehicle, they must offer the UM coverage. So there's a difference between the primary policies. When you're dealing with a primary policy, the accident occurs in Florida. This is all the cases the defense has cited or the state farm has cited deal with a primary policy. Because the primary policy was issued in that state. The accident happens in Florida or another state. And then you get into the analysis of were these people really connected enough with Florida that the insurer knew they were really Florida people and really should be dealing in Florida law. Different with the excess policy because the insurer knows this is a Florida vehicle, Florida people, because it's insured in Florida and the excess policy is providing the coverage to that policy. The insurance company knows because they're insuring the primary. Is there anything in the record that would reflect that State Farm was given notice by the Walkers that their permanent residence was now Florida and not North Carolina? Again, it's not relevant to this analysis, but the answer is yes. There was an email exchange between State Farm and our clients where State Farm characterized, we said we're going to treat this as a mailing address change. But then they added, this is State Farm, we are going to treat you, I'm going to advise underwriting at State Farm. This is from the agent. And by the way, they are true agents. I will advise underwriting at State Farm that you are dual residence, meaning dual residence North Carolina and Florida. Dual residence, that's a word they used. They need to comply with North Carolina and Florida law. But yes, they did say that. But the point that I would make, and it's very important, is that the Walkers at the time of this accident had three vehicles, all their vehicles, insured in Florida under Florida insurance policies with State Farm. They still had insured properties in North Carolina, did they not, at that time? If they did, and I'm not sure, because it's not specifically delineated in the excess policy, I believe it was just a rental property at that point in time. And that umbrella policy was issued in North Carolina? Originally, yes. And the State Farm agent in North Carolina explained to Mrs. Walker that she needed to get a policy in Florida for the car they were going to keep in Florida. Is that correct? That is absolutely correct. They were fully aware that they were going to have a Florida vehicle under that excess policy. And is there any reason, is there anything in the record to reflect that they were ever offered an excess or umbrella policy in Florida? They were not, and the record reflects that they even asked about that. And they didn't have one, and Mr. Walker realized that it was going to cost him more money. Is that right? That's not in the record. All right. That is not in the record. The only thing that's in the record is that they were told, oh, the North Carolina agent wants to keep servicing your excess policy, which is fine. No, they were not shopping around. They purchased uninsured motorist coverage on every policy of insurance they had. Well, just as a matter, I know the public policy exception is not before this Court, but just as a matter of policy, when we're looking at this case and we know we could be setting a precedent here, where should the obligation rest in an ambiguous situation like this? Well, there's two things. I would say that this is not a precedent. The precedent already exists. The Strzok case is unenforced. It's been answered by the Florida Supreme Court. Except that was a brand-new policy, according to State Farm. That was a new policy in Strzok that was issued and delivered in Florida, was it not? But that is not the reason why that is brought up in that decision. The reason why it was brought up in that decision that this was a new policy is because under the previous policy, they had rejected uninsured motorists. Completely different issue. And they did not have that opportunity to reject. So when the new policy came out, they weren't presented with another opportunity. But that's not what the Strzok case held. The Strzok case held unequivocally, in fact, not nearly as good, if you will, as the facts in this case, that when you insure a car in Florida that is covered by a foreign excess policy, that excess policy must offer you uninsured motorists. Period. And in Strzok, and that is backed up by APRM and also the, and I say it wrong every time, NRAC, NRAC cases, which follow the language of the statute, says issued for delivery or delivered in Florida. The policy in our case was delivered in Florida, was physically delivered in Florida, was mailed to them in Florida, the excess policy. And more importantly, the issued for delivery is accomplished by what I've just been telling the court, that when a car is insured in Florida with a Florida policy, and there's an excess policy somewhere else in the country, anywhere else in the country or in Florida, they must offer uninsured motorists. Because that excess policy, the insurance company is aware of the primary. They're aware that the excess coverage is covering that Florida policy and the statute requires them because they are providing that coverage or tracking that coverage to offer the uninsured benefits. I think we've got your argument, Mr. Pennekamp. Let's hear from Ms. Bogus. May it please the Court, my name is Rhonda Bogus and I have the privilege of representing State Farm Fire and Casualty Company, who is FAPLI. The Florida Supreme Court has unambiguously set forth that Florida is not going to apply a significant relationships test. It's not going to apply a contact-based, risk-based analysis in determining choice of law when it comes to insurance contracts. They've also held clearly that as it comes to auto insurance policies, including uninsured motorists, and that's the Lumberman's case, the Storiano case, these are Florida Supreme Court cases, that Florida follows Lex Loci Contractus. Florida's got a lot of people in and out, sort of like the walkers. They're sort of living in Florida, they're sort of not. They've got places where there are snowbirds. Florida does not want to deal with the scenario where you have to analyze where the different risk and everything is. It's very clear. Is it issued and delivered in Florida? There is an exception. As Judge Wright pointed out, there is a narrow public policy exception. That public policy exception was litigated below, and the court found that the public policy exception did not apply. I actually agreed with the characterization of State Farm's argument in the reply. It is our position that in Florida, for a Florida law to apply on a choice of law provision, choice of law, it's either issued and delivered in Florida or a public policy exception. Now, what they're trying to argue is that somehow the Strzok, and I would argue it's not anywhere close to being on point, that the Strzok decision, which was before the Florida Supreme Court Roach decision, that somehow that's an additional exception. But the Florida Supreme Court has itself spoken on Strzok, so we don't need to try to interpret what Strzok says. The Florida Supreme Court in Roach in 2006 said very clearly, and it talks about Strzok at least three times, that in Strzok it was a Florida-issued and delivered policy, and that therefore it was a, quote, straightforward application of Lex Loci rule. Now, the Roach court says that in Strzok it contained, it was a new, insured, it was the widow, it was a new policy, and it contained Florida policy terms and Florida-issued signatures. So it was a Florida policy. Then again, the Florida, and then again after that, we have the first DCA decision, which this court can look at also as instructive on Florida law, which says, again, Strzok doesn't apply when we're talking about what changes and additions and subtractions of cars to an excess policy because Strzok was a new Florida policy. Duckworth, same thing. Duckworth was before this court, and it involved the public policy exception, and the court in a footnote said, we don't need to deal with Strzok. Strzok is a Florida-issued policy. So what do we have here? We have a North Carolina-issued and delivered policy. In fact, I will answer the question, Judge Wilson, you asked about whether risk at the time, there absolutely were risk at the time. At the time of the accident in 2015, they had a homeowner's policy on the plantation drive address in Wilmington, North Carolina. They had a rental policy in White Road in North Carolina. They were dealing with State Farm. They had used the North Carolina addresses. They had been using their North Carolina. This is an umbrella policy. It's not a policy that ensures specifically identified cars. It's a policy that provides excess liability protection to the walkers. And that's what it is. Now, the other question, what did the trial court find? And the findings of the trial court were not appealed to this court. The trial court determined that, in fact, they had not clearly and unambiguously communicated to State Farm Fire a permanent relocation to Florida. That is actually in the report of recommendation, which was adopted by the district court on page 22 and 23. So, in fact, there was a determination that State Farm had not been notified and did not have notice of a permanent residence change of the walkers. And that has not been appealed. They've not appealed that. What's interesting is in their complaint, I mean, in their brief, they basically, and I kind of quoted this from in there, it said that the policy should be deemed and delivered in Florida. A State Farm had change of circumstances of the risk and the primary residence. Well, first off, that's trying to restate the public policy exception. That's trying to say we don't have to, you can come up with a different exception because there were some cars in Florida. And that's not the issue. This is an excess policy where it's not insuring specifically insured cars. It's not. We don't do, Florida does not follow a risk-based analysis. It doesn't follow a how many cars were here, how many homes were here, how many boats were here, because it's either public policy exception or it is issued and delivered. And the court found that there was not a new policy. This was a policy term that had basically the only thing that had changed, excuse me, the only thing that had changed was a mailing address, which Florida law makes very clear does not do anything. You know, it was just, it was a pure excess policy issued and delivered in the state of North Carolina. In fact, I would even draw this court's attention to the Rondo decision, which is a different, they were applying Florida law. But in that case, the fact that it was issued and delivered in Florida, the court said that was determinative. They could care less whether the fact that the car was registered and delivered in another state. That wasn't the issue. The issue is where was it issued and delivered. One of the other questions were on the public policy. Judge Wright, you asked about that. I think the public policy of Florida has been set forth by the Florida Supreme Court in the Roach decision, and that is that Florida is not going to allow itself to be in a situation where judges are required to evaluate the various different, where the different potential risk and where all the different locations of the people are, whether they're in three months or six months or seven months. They're not going to do that. It's a very straightforward issued and delivered or public policy exception. We know the public policy exception does not apply here. We know this was a policy issued and delivered in the state of Florida. I also take issue with the idea that somehow that the 627-727 somehow has a different public policy and that that somehow would change the choice of law provisions because Roach, again, was a policy, was a case dealing with 627-727. So was O'Brien. And so we know for sure that that's not a different. In fact, I'll bring it back to Strzok, because he keeps talking about Strzok. In Strzok, the court said, the 11th Circuit, when they were certifying it, said, we recognize that Florida follows Lex Loci, citing Sturiano. However, we have the statute here, and oh, we think, look at this Amarok case. The Florida Supreme Court said, well, we're going to make it simple for you. Look at the Florida Supreme Court case answering this court's Strzok certification. The Florida Supreme Court said, Sturiano, it is a Lex Loci contractus analysis. That's all you need to know. And then when you read the Roach decision, the Roach is right on point. Roach makes it very clear that Strzok was clearly a Lex Loci, and there is no determination that any changes were made, any Florida terms, anything else. This is a North Carolina policy that had been in effect since 2001, which was ensuring the walkers who had not notified State Farm of any permanent change for which underlying risks were both in North Carolina and Florida. It should be construed according to North Carolina law, and under North Carolina law, and under the terms of the policy, there are no uninsured motorists. If there's not any additional questions. Thank you. I think we have your argument. Thank you, Ms. Boggess. And Mr. Pennekamp, you've reserved some time. Yes. Again, State Farm wants to talk about the public policy exception to Lex Loci contractus. That is not what's at play here. That is at play when you're dealing with primary insurance policies. An excess insurance policy incorporates, by reference, if you will, the primary insurance policies. It's the shortest policy written. It just says if you have liability under the primary policy, we will pay in addition, if you have liability under that primary policy, which is why Strzok is decided the way it is. It's an excess policy. And it is directly on point. This exact question has already been answered. All right. So let me just ask you this, because I think I'm just not understanding the sort of the ships passing in the night here about whether Strzok is on point or not. Because, I mean, as I reviewed Strzok, it seemed to me that there were significant differences, because there you had, you know, a different policy number, Florida-specific policy terms, Florida signatures, different coverage issued in the name of a different insured. And here you have none of that stuff. You have it mailed to a Florida address, but that's about all you have, right? Yes, Judge. But, again, please take a moment to read the section you're talking about in Strzok. The reason why in Strzok it was important that there was a new policy is simply because under the original policy, they had rejected uninsured motorists. So without a new policy, they never would have reached the question this court asked them, which is if you insure a car in Florida, does the excess have to offer you uninsured motorists? That question was answered, yes. And Strzok does not require, if you read it, does not require anything more than that occurring. Now, in this case, we've got more. It was mailed here in Florida to their residence. By the way, there's no doubt these people were Florida citizens. Under the IRS, Florida, God, they were Florida citizens. Everything they could do to have residency, they had homestead, voters registration, all their cars, all their cars. And we're not talking about homeowners. It's specific. The statute is specific with respect to automobiles. When you have an automobile insured in Florida and an excess policy is providing liability coverage, they are going to require that liability, that excess insurer, to offer the UM that's required on the primary. Whether that policy was issued before or after, it needs to offer it. And that's what the statute says. That was a question asked, and that's what the court held. I think we've got your arguments. And thank you, counsel. And court is adjourned. All rise.